**Clark JENSON, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 93–3498.**

United States Court of Appeals, Eighth Circuit.

Submitted April 11, 1994.

Decided May 5, 1994.

Counsel who presented argument on behalf of the appellant was Dana C. Bradford, III of Omaha, NE.

Counsel who presented argument on behalf of the appellee was Alice L. Ronk of the Tax Div., Dept. of Justice, Washington, DC.

Before RICHARD S. ARNOLD, Chief Judge, HENLEY, Senior Circuit Judge, and BEAM, Circuit Judge.

HENLEY, Senior Circuit Judge.

In this tax refund case, Clark Jenson appeals the district court's[1] grant of summary judgment in favor of the United States. We affirm.

Jenson was the founder and president of Clark Jenson Nursery, Inc. (the Nursery). In 1984, he hired Deanna Tuttle to help with the company's bookkeeping. According to Jenson, he eventually turned all office matters over to Tuttle. In 1988, Tuttle began embezzling corporate funds, and as a result the Nursery failed to pay withheld employment taxes to the federal government. Jenson did not learn of Tuttle's actions until March 1989, at which time he arranged to fire her. The Nursery subsequently began making payments of approximately $10,-000.00 per month to make up its tax deficit. However, the business was not financially successful, and the Nursery ceased operations in early 1990. A substantial portion of the 1988 tax deficiency remained unpaid.

On October 21, 1991, the Internal Revenue Service (IRS) assessed a penalty against Jenson under § 6672 of the Internal Revenue Code (26 U.S.C.) for the unpaid amount plus interest. The assessment was based on a determination that Jenson was a responsible person who willfully failed to pay over the withheld taxes. Jenson paid a nominal amount and filed a claim for a refund. After the IRS denied the claim, Jenson sued in federal court. The government filed counterclaims against both Jenson and Tuttle, seeking payment of the remainder of the assessment. Jenson filed a cross-claim against Tuttle.

The government obtained a default judgment against Tuttle and then filed a motion for summary judgment against Jenson. The district court granted the motion and Jenson subsequently appealed to this court.[2]

■ Appeals from summary judgment are reviewed de novo. *Kolb v. Scherer Bros. Fin. Servs. Co.*, 6 F.3d 542, 544 (8th Cir. 1993). Consequently, we must view the facts in the light most favorable to Jenson. *Id.* We will affirm the judgment of the district court only if we determine that there is no genuine issue of material fact and that the government is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c).

■ The ultimate issue in this case is whether Jenson is personally liable under 26 U.S.C. § 6672 (1989), which provides in pertinent part as follows:

Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall, ... be liable to a penalty equal to the amount of the tax evaded, or not collected, or not accounted for and paid over....

This court has held that an individual is liable under § 6672 if he (1) is a "responsible person" who (2) "willfully" fails to pay over the taxes in question. *Honey v. United States*, 963 F.2d 1083, 1086 (8th Cir.), *cert. denied*, —— U.S. ——, 113 S.Ct. 676, 121 L.Ed.2d 598 (1992); *Kizzier v. United States*, 598 F.2d 1128, 1132 (8th Cir.1979). A corporate officer is responsible "if he has significant, albeit not necessarily exclusive, authority in the field of corporate decisionmaking and action where taxes due the federal government are concerned." *Hartman v. United States*, 538 F.2d 1336, 1340 (8th Cir.1976). Moreover, "he need not be an actual disbursing officer." *Id.; see also Kenagy v. United*

<hr>

1. The Honorable Lyle E. Strom, Chief Judge of the United States District Court for the District of Nebraska.

2. The government argued in its brief that the appeal should be dismissed because the district court had not disposed of Jenson's cross-claim against Tuttle. At the time, the district court had not issued a certification pursuant to Fed.

R.Civ.P. 54(b). However, because the district court has subsequently certified its order for immediate review, we may entertain Jenson's appeal. *See Martinez v. Arrow Truck Sales, Inc.*, 865 F.2d 160 (8th Cir.1988). Accordingly, we grant Jenson's motion for leave to file a supplemental appendix containing the Rule 54(b) certification.

*States,* 942 F.2d 459, 464 (8th Cir.1991) ("Responsible persons are those who have the status, duty and authority to avoid the corporation's default in collection or payment of the taxes."). A person acts willfully in this context if he " 'acts or fails to act consciously and voluntarily and with knowledge or intent that as a result of his action or inaction trust funds belonging to the government will not be paid over but will be used for other purposes.' " *Olsen v. United States,* 952 F.2d 236, 240 (8th Cir.1991) (quoting *Hartman,* 538 F.2d at 1341).

Jenson argues that if all inferences are drawn in his favor, as they must be, a jury could reasonably find that he was neither responsible nor willful. We disagree.

First, Jenson claims that he was not responsible for the payment of taxes during Tuttle's employment because she handled all of the Nursery's financial matters. However, his own deposition suggests otherwise. As we have stated, Jenson was the founder and president of the corporation. His family owned all of the company's stock, and he served on the board of directors throughout the corporation's existence. He retained the exclusive right to borrow on behalf of the corporation, and he had authority to fire all employees. Though Tuttle was given some discretion in hiring office personnel, Jenson remained involved in all such decisions. Both Jenson and Tuttle had authority to sign corporate checks, and Jenson himself generally signed payroll checks. Tuttle regularly consulted with Jenson regarding all major financial issues, such as accounts payable, accounts receivable and health insurance. Each month, Tuttle provided Jenson with accounting statements showing profit or loss. Finally, in this connection we note that Jenson admitted responsibility in his deposition.[3] We hold that no genuine dispute exists as to Jenson's responsibility for the Nursery's taxes during the period in question.

Jenson next claims there is a genuine factual issue as to whether he willfully failed to pay the Nursery's taxes. However, it is undisputed that after he learned of the corporation's tax liability, he voluntarily and consciously chose to pay certain creditors (*e.g.,* employees, utilities, suppliers) before settling with the IRS. As Jenson recognizes, this is sufficient to establish willfulness as a matter of law. *See, e.g., Honey,* 963 F.2d at 1087; *Olsen,* 952 F.2d at 240 ("Evidence that the responsible person had knowledge of payments to other creditors, including employees, after he was aware of the failure to pay over withholding taxes is proof of willfulness as a matter of law.").

Jenson contends he was excused from his duty to pay because all of the corporation's assets were encumbered. This argument is without merit, for "funds are encumbered only where the taxpayer is legally obligated to use the funds for a purpose other than satisfying the preexisting employment tax liability and if that legal obligation is superior to the interest of the IRS in the funds." *Honey,* 963 F.2d at 1090. Though the Bank of Elkhorn held a perfected security interest in all of the Nursery's assets, it did not prohibit the Nursery from paying other debts. Indeed, the record reveals that after discovery of Tuttle's embezzlement, the Nursery paid out over $500,000.00, but only about $20,000.00 went to the bank.[4] Moreover, the bank specifically encouraged Jenson to pay the IRS. We conclude that the Nursery was not legally obligated to pay the bank before paying the government.

Accordingly, finding no genuine issues of material fact, we hold that the government is entitled to judgment as a matter of law. As indicated, the judgment of the district court should be, and is, affirmed.

---

**3.** At oral argument Jenson's counsel claimed any admission merely described Jenson's status after Tuttle had been fired. This is a strained interpretation of the deposition transcript. Moreover, even if we agreed with counsel's assertion, we would find it difficult to distinguish Jenson's status before and after Tuttle's termination. Though afterward Jenson more closely scrutinized his employees' records, his corporate responsibilities and authority were basically unchanged.

**4.** Jenson does not assert that any creditor other than the bank had a claim superior to that of the IRS.