A11A1844. COASTAL MARSHLANDS PROTECTION
COMMITTEE v. ALTAMAHA RIVERKEEPER, INC.
A11A1845. FIRST SOUTHERN NATIONAL BANK et al.
v. ALTAMAHA RIVERKEEPER, INC.
(726 SE2d 539)

MIKELL, Presiding Judge.

Appellants Coastal Marshlands Protection Committee ("Committee"), First Southern National Bank, Montgomery Bank and Trust, Citizens Bank of Swainsboro, and Bank of Soperton appeal from the superior court's order vacating an administrative law judge's ("ALJ") decision to affirm the Committee's decision to issue a permit for a moveable floating dock over a marshland. In their sole enumeration of error, the appellants contend the superior court applied the wrong standard of review to the ALJ's decision. Specifically, the appellants assert that the superior court erred by changing the ALJ's role to one of appellate review for sufficiency of the evidence before the Committee where the permit applicant bore the burden of proof. They maintain that well-established law requires an ALJ to conduct a de novo review with a shift in the burden of proof to the permit challenger. For the reasons explained below, we agree and reverse.

This case involves a permit issued by the Committee allowing MID-ROC, LLC,[1] to construct and maintain a community dock over marshlands along the South Newport River in McIntosh County for a proposed subdivision. The permit was issued after three meetings with MID-ROC and the Committee over a ten-month period of time, and only after MID-ROC submitted an entirely new dock design in response to the Committee's denial of a permit after the second meeting.

Following the Committee's grant of a permit with the new dock design, Altamaha Riverkeeper, Inc. and two landowners with property near the proposed subdivision (collectively "Riverkeeper") sought

---

[1] Appellants First Southern National Bank, Montgomery Bank and Trust, Citizens Bank of Swainsboro, and Bank of Soperton are MID-ROC's successors in interest following foreclosure.

review of the Committee's decision by an ALJ. The ALJ conducted hearings for three days over a three-month period and held the record open for almost two months to allow the parties to submit proposed findings of fact and conclusions of law. The ALJ then issued a detailed 17-page de novo decision affirming the Committee's decision to issue a dock permit based upon the evidence and arguments submitted by the parties. She also rejected Riverkeeper's assertion that it could satisfy its "burden of proof by showing that the Committee lacked sufficient information upon which to make an informed decision."

Dissatisfied with the ALJ's decision, Riverkeeper filed a petition for judicial review in Fulton County Superior Court. The superior court issued a four-page order in which it concluded "that the factual determinations made by the administrative law judge are supported by some evidence in the record." It disagreed, however, with the ALJ's refusal to consider whether the Committee's decision to issue a permit was supported by sufficient evidence. The superior court reversed based upon the following reasoning:

> [T]he [ALJ's] decision allows no grounds for challenging a permit other than a violation of the authorizing statute[.] [T]he net affect of the standard set in [*In re: Coffee County Solid Waste Handling Permit,* No. DNR-EPD-SW-AH 4-86, 1987 Ga. ENV LEXIS 21, March 9, 1987], is to create an irrebuttable presumption that all permits have been issued pursuant to a proper exercise of discretion and a valid process. Such a standard is contrary to Georgia Law. The burden on one seeking to challenge issuance of a permit is to show that the permit was wrongfully issued. *Hughey v. Gwinnett County,* 278 Ga. 740 [(609 SE2d 324)] (2004). A permit may be wrongfully issued even though once issued it does not violate its authorizing statute or related regulations.

Following the superior court's issuance of a final order, this court granted the Committee's application for discretionary review.

Appellants contend in their sole enumeration of error in this court that the superior court erred by concluding that the ALJ committed a legal error by failing to consider whether the Committee abused its discretion in issuing the permit. We conduct a de novo review of claimed errors of law in the superior court's appellate review of an ALJ's decision. *Coastal Marshlands Protection Committee v. Center for a Sustainable Coast,* 286 Ga. App. 518, 521 (2) (649 SE2d 619) (2007).

The Coastal Marshlands Protection Act of 1970, OCGA § 12-5-280 et seq., provides that a party seeking to build a structure

over any marshland in Georgia must first obtain a permit from the Committee. OCGA § 12-5-286 (a). Applicants seeking a permit must "demonstrate to the [C]ommittee that the proposed alteration is not contrary to the public interest and that no feasible alternative sites exist." OCGA § 12-5-286 (h). Factors relevant to the "public interest" include whether the structure will: (1) create an unreasonably harmful obstruction to or alteration of the natural flow of navigational water; (2) create unreasonably harmful or increased erosion, shoaling of channels, or stagnant areas of water; and (3) unreasonably interfere with the conservation of marine wildlife or wildlife resources including water and oxygen supply. OCGA § 12-5-286 (g).

The Act also provides:

> Any person who is aggrieved or adversely affected by any order or action of the committee shall . . . have a right to a hearing before an administrative law judge appointed by the [B]oard [of Natural Resources]. The hearing before the administrative law judge shall be conducted in accordance with Chapter 13 of Title 50, the "Georgia Administrative Procedure Act," and the rules and regulations adopted by the board pursuant thereto. The decision of the administrative law judge shall constitute the final decision of the board and any party to the hearing, including the committee, shall have the right of judicial review thereof in accordance with Chapter 13 of Title 50.

OCGA § 12-5-283 (b).

The Office of State Administrative Hearings ("OSAH") adjudicates contested cases on behalf of the Department of Natural Resources. OCGA §§ 50-13-40 (a) (creation of OSAH); 50-13-41 (a) (1) (contested cases heard by OSAH); Ga. Comp. R. & Regs. r. 391-1-2-.02 (2) (b) (ALJ hears all contested cases arising under Coastal Marshlands Protection Act). The Rules of Administrative Procedure enacted by OSAH provide that a party challenging the grant of a license by a state agency bears the burden of proof, and this approach has been endorsed by the Supreme Court of Georgia. Ga. Comp. R. & Regs. r. 616-1-2-.07; *Hughey*, supra at 741 (2). See also OCGA § 50-13-2 (3) (license defined to include permit). Additionally, the administrative procedure rules provide that an ALJ "shall make an independent determination on the basis of the competent evidence presented at the hearing." Ga. Comp. R. & Regs. r. 616-1-2-.21 (1). Hearings conducted by the ALJ "shall be de novo in nature, and the evidence on the issues in a hearing shall not be limited to the evidence presented

to or considered by the Referring Agency prior to its decision." Ga. Comp. R. & Regs. r. 616-1-2-.21 (3). Finally, the ALJ "may make any disposition of the matter available to the Referring Agency." Ga. Comp. R. & Regs. r. 616-1-2-.21 (1). Under this scheme, an ALJ does not provide "judicial review," but instead issues the final decision of the Committee. Cf. *Longleaf Energy Assoc. v. Friends of the Chatta-hoochee*, 298 Ga. App. 753, 769 (7) (681 SE2d 203) (2009) (decision of ALJ final decision of referring agency).

The Supreme Court of Georgia has held that if a challenger's petition before an ALJ seeks to overturn the issuance of a permit, "the burden shift[s] to the challenger to show that the permit was wrongfully issued." *Hughey*, supra at 741 (2). See also *Longleaf*, supra at 768 (7). The parties in this case disagree about *how* a permit challenger shows that the permit was wrongfully issued in the context of a de novo hearing before an ALJ.

Appellants contend that a "permit challenger must affirmatively demonstrate by a preponderance of the evidence that the permit, or the operation of the permitted activity pursuant to the terms and conditions of the permit, violates or will violate provisions of the applicable statute or the regulations adopted thereunder." Appellants argue that permit challengers must affirmatively prove that a permit was "wrongfully issued" under the Coastal Marshlands Protection Act by showing by a preponderance of the evidence that the proposed structure would be contrary to public interest or that a feasible alternative exists. See OCGA § 12-5-286 (h).

Riverkeeper does not dispute that it bears the burden of proof before the ALJ or that the ALJ conducts a de novo hearing. Instead, it asserts that it can fulfill its burden of showing the permit was "wrongfully issued" by pointing out that the Committee lacked "the information needed to make a valid public interest determination." According to Riverkeeper, the Committee lacked "information necessary to make a valid public interest determination" as demonstrated by its special condition for the permit to require MID-ROC to gather data after the permit was issued. It contends that it can meet its burden "by showing that the permit was wrongfully issued because the applicant and the agency did not meet the standards of the Marsh Act, which require a *demonstration* by the applicant and *findings* by the agency *before* the permit can issue." In essence, Riverkeeper asserts that an ALJ should deny a permit if there was *insufficient* evidence before the Committee showing that a particular structure will *not* be contrary to the public interest.

We find no merit in Riverkeeper's argument. Under the Administrative Procedure Act, the ALJ was required to make an "independent determination" based upon the evidence presented and was

authorized to make any disposition available to the Committee when it reviewed the permit application. See *Longleaf,* supra. Requiring an ALJ to determine whether a permit applicant met its burden of proof before the Committee would vitiate the long-standing rule that an ALJ must make an independent determination of whether the permit would violate the provisions of the applicable statute or regulations. See *Gwinnett County v. Lake Lanier Assn.,* 265 Ga. App. 214, 221 (2) (593 SE2d 678) (2004) (holding trial court erred by shifting burden of proof to agency to demonstrate compliance with statute when permit challenger "had the burden to demonstrate noncompliance"), affirmed in part, reversed in part, *Hughey,* supra; *In re Coffee County Solid Waste Handling Permit,* supra (concluding permit challenger's argument that evidence before agency was insufficient will not sustain its burden of proof before ALJ).

In this case, the ALJ's order reveals that it carefully considered and analyzed all of the available evidence and independently determined that there was "no credible evidence that the proposed dock" would be contrary to the public interest or that a feasible alternative site existed. The superior court reviewed these findings and concluded they were supported by some evidence, i.e., some evidence in the hearing before the Committee. But what evidence was presented to the Committee is irrelevant to this case. The proper issue for the superior court was whether there was enough evidence at the hearing before the ALJ. There was some evidence before the ALJ, and therefore its decision should have been affirmed.

Although our Supreme Court has said that the burden (i.e., the burden on one opposed to the permit) must show that the permit was "wrongfully issued," that decision must be reconciled with other authorities, including the OSAH regulations and case law following *Hughey.* We conclude that "wrongfully issued" means that the facts and discretionary decision of the ALJ are contrary to those made by the Committee. The ALJ hearing is, in reality, not an appellate procedure but a trial de novo in which additional evidence may be introduced. Thus the issues before the superior court are whether the permit was wrongfully issued by the ALJ, i.e., by the Department of Natural Resources, and not whether the permit was wrongfully issued by the Committee.

The superior court's involvement is an appellate proceeding and not a de novo trial. The standard of review for the superior court, as for us, is partly "any evidence," and partly "abuse of discretion." The ALJ's findings of fact must have been based on some evidence. As with any bench trial, the findings of fact are overturned even when supported by strong evidence, when they were "found" while the judge was operating under an erroneous view of the law. That part of

an appellate decision is always, really, de novo. An "abuse of discretion" standard applies when the superior court, or our court, reviews the ALJ's finding that the project is in the public interest. The superior court erred by focusing on whether the Committee's decision was right or wrong. Instead it should have focused on whether the ALJ's decision was right or wrong. As mentioned above, the ALJ's factual findings are right if they were based on any evidence. But the requirement in the Marsh Act that the proposed project was in the public interest injects equity into the necessary decisions.

The appellees argue that the special condition of the permit that additional data be gathered after construction of the dock "demonstrates" that insufficient data was available prior to the permits being issued. We disagree. Our adopting the appellees' view would discourage the ALJ or the Committee from adding such special conditions despite the evident desirability of monitoring changes to the marsh environment in the future. The fact that additional data might be useful does not prove whether the decision maker had scant data, overwhelming data, or no data at all, when it made its decision.

We reverse the decision of the superior court and remand with instruction to affirm the decision of the ALJ, i.e., the decision of the Board of Natural Resources.

*Judgments reversed and cases remanded. Adams and Dillard, JJ., concur.*

DECIDED MARCH 21, 2012 —
RECONSIDERATION DENIED APRIL 12, 2012 — ▮▮▮▮▮▮

*Samuel S. Olens, Attorney General, Isaac Byrd, Deputy Attorney General, James D. Coots, John E. Hennelly, Senior Assistant Attorneys General, James A. Chamberlin, Jr.,* for Coastal Marshlands Protection Committee.

*Franklin, Taulbee, Rushing, Snipes & Marsh, James B. Franklin, Lehman & Heard, Lawton C. Heard, Jr.,* for First Southern National Bank et al.

*Donald D. J. Stack,* for Altamaha Riverkeeper, Inc.